In the Interest of J.M.B., A Minor.

No. 70917.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 25, 1997.

Glenn Hunt, Clayton, for appellant.

Nancy Lee Sido, Clayton, for respondent.

Sarah Shelledy Pleban, St. Louis, guardian ad litem.

Before DOWD, P.J., and REINHARD, and GARY M. GAERTNER, JJ.

PER CURIAM.

Appellant, M.Y.B. ("mother"), appeals the judgment of the Circuit Court of the County of St. Louis terminating her parental rights in J.M.B. ("infant") pursuant to RSMo § 211.444.[1] We reverse and remand.

Mother gave birth to infant, a boy, on July 15, 1995. Mother lives at home with her mother (hereinafter referred to as "grandmother") and attends high school in the St. Louis area. Grandmother is the sole support for the family. Both mother and grandmother cared for infant until early October, 1995, when mother placed him with Missouri Baptist Children's Home due to her inability to care for infant while she continued her education. Mother resumed custody of infant on December 24, 1995, but returned him to the Home on January 15, 1996, again citing her inability to continually care for infant. On that date, mother and grandmother, acting as mother's guardian ad litem ("GAL"), signed forms consenting to the termination of mother's parental rights.

Missouri Baptist Children's Home referred the matter to family court where proceedings to terminate mother's and father's parental rights were initiated.[2] The case was set for hearing on March 28, 1996, on the court's "consent docket." Mother and grandmother appeared at the hearing. Mother was equivocal when questioned under oath about her decision to terminate her parental rights. Mother repeatedly stated she desired to keep infant, but that her ability to find the funds to raise him while she continued her education was difficult. The trial court ended the hearing upon learning mother was contesting the termination. Mother then requested an attorney to represent her. She and grandmother were given forms to fill out in order to have an attorney appointed. The minute entry for March 28, 1996, reflects the case was continued to April 16, 1996, and an attorney was appointed as "guardian and attorney for minor mother." The entry also shows copies of the notice were sent to the parties.

On April 16, 1996, the cause was again called. Mother and grandmother did not appear, although mother's court-appointed guardian and attorney was present. The juvenile officer stated she was ready to proceed and presented evidence that mother signed consent forms voluntarily relinquishing her parental rights to infant. Mother's appointed counsel cross examined the juvenile officer's lone witness. After the juvenile officer rested her case, mother's counsel stated to the trial court:

> Your Honor, no evidence. I'd just like the record to reflect that [mother] has not contacted me nor has she appeared here today. However, as her guardian ad litem, I do believe that the termination of her parental rights is in her best interest.

The trial court then terminated mother's parental rights to infant. Mother filed a motion to amend the judgment or in the alternative for a new trial, which was dismissed as

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

2. Father also signed forms consenting to the termination of his rights. He did not contest this consent at trial, nor does he challenge the trial court's ruling on appeal.

untimely presented. Mother now appeals to this court.

Mother raises two points on appeal. First, she contends the trial court erred in finding she had been properly served with notice of the April 16 hearing, thus depriving her of due process of law. Second, mother asserts her court-appointed counsel rendered ineffective assistance at the hearing, again depriving her of her right to due process. We will address each point in turn.

■ In termination cases, service of process is governed by RSMo § 211.453. The statute provides service of summons in such cases will be made in the same manner as in other civil cases under RSMo § 506.150. RSMo § 211.453.1. RSMo § 506.150 directs that:

1. The summons and petition shall be served together. Service shall be made as follows:

(1) Upon an individual, including an infant ..., by delivering a copy of the summons and of the petition to him personally or by leaving a copy of the summons and of the petition at his dwelling house or usual place of abode with some person of his family over the age of fifteen years,....

The legal file contains copies of the returns of service showing mother and grandmother were personally served on March 19, 1996. The service of summons was accepted at the parties' home by George Jones, grandmother's father. This comports with the mandates of RSMo §§ 211.453.1 and 506.150.1(1). Indeed, mother and grandmother were present for the first hearing on March 28, 1996. On that date, the trial court continued the matter to April 16, and appointed an attorney and GAL to represent mother.

■ Mother also claims she was not properly served with a copy of the court's memo which set forth the continuance date. Notices setting a cause for trial are governed by Rule 43.01, which provides:

(a) **Service—When Required.** Every pleading, subsequent to the original petition, ... and every written notice, ... order, and similar paper that by statute, court rule or order is required to be served shall be served upon each of the parties affected thereby,....

* * *

(c) **Service—How and by Whom Made.** Unless otherwise ordered by the court, service required by Rules 43.01(a) and 43.01(b) may be made in the following manner:

* * *

2. Upon a party, by delivering or mailing a copy to the party, by transmitting a copy to the party by facsimile transmission, or by serving a copy in the manner provided for service of summons in Rule 54.13.

Service provided for in ... Rule 43.01(c)(2) may be made by a person over the age of eighteen who is not a party to the action. Service by mail is complete upon mailing....

The minute entry for March 28, 1996, reflects the hearing was continued until April 16, and an attorney was appointed as GAL and counsel for mother. The entry further reflects copies were sent to the parties. Under the rule, service by mail is complete upon mailing, not receipt. *See Smith v. Smith*, 908 S.W.2d 170, 172 (Mo.App. E.D.1995). Thus, mother's argument she was not properly served is not persuasive. Her position is further undermined by the fact grandmother mailed a copy of the court's memo back to the court along with the forms she was given at the March hearing. One could presume mother and grandmother received the notice and had it in their possession before grandmother could have enclosed it in an envelope with the other documents. The record clearly shows mother received adequate notice of the hearing as well as of the appointment of an attorney. Her first point is denied.

■ Mother also urges this Court to find her court-appointed counsel rendered ineffective assistance at the hearing. Missouri has recognized the statutory right to counsel includes the right to effective assistance of that counsel. *See* RSMo § 211.462.2; *In Interest of J.C., Jr.*, 781

S.W.2d 226, 228 (Mo.App. W.D.1989). In Missouri, the test is whether the attorney was effective in providing his client with a meaningful hearing based on the record. *J.C., Jr.,* 781 S.W.2d at 228. After reviewing the record in the present case, we find mother's counsel rendered ineffective assistance at her hearing, thus depriving mother of her right to due process.

The record reveals the case was called on April 16. The juvenile officer noted mother and grandmother were absent, having previously been served and called thrice, and stated she was prepared to go forward with evidence. Mother's attorney stood silently by: he did not request a continuance nor even a short recess in order to try to contact mother. Counsel did not raise one objection during the juvenile officer's direct examination of the only witness, a social worker from the Missouri Baptist Children's home. Counsel's cross examination did not exceed a dozen questions; only three of these concerned the voluntariness of mother's consent, which was a crucial issue at the hearing.

After the juvenile officer concluded her case, counsel briefly stated he had no evidence to present on behalf of mother, explaining mother had not contacted him, nor had she appeared. He offered no argument or explanation on mother's behalf. Instead, he stated he believed, as mother's GAL, that mother's parental rights should be terminated. Counsel did not reveal on what grounds he based this opinion. The trial court then entered its order terminating mother's rights to infant, and ordering Missouri Baptist Children's Home to pay counsel $75 for his services.

It appears from the record counsel did little as mother's counsel beyond appear for the hearing. While he did pose several questions to the juvenile officer's witness, it can hardly be said he advocated his client's inter-

ests. Of the questions asked, only a few were geared to elicit information favorable to his client. While the other information may have been useful to counsel in his capacity as mother's GAL, counsel failed to cite any evidence as support for his recommendation as mother's guardian.[3] The transcript consists of twenty pages; counsel's cross examination occupies only two of those. *See id.* (finding ineffective assistance where transcript totalled eight pages where attorney stipulated to all evidence and no witnesses testified).

■ While mother's absence made counsel's duty more difficult to fulfill and is not condoned by this Court, it did not abrogate mother's right to effective assistance. Rather, mother's absence made the need for effective assistance from counsel even more important, especially in light of the awesome power wielded by a court in severing the parent-child relationship.[4] *See In Interest of W.S.M.,* 845 S.W.2d 147, 151 (Mo.App. W.D. 1993).

The juvenile officer argues mother's reliance on *J.C., Jr.,* 781 S.W.2d 226, the only Missouri case finding ineffective assistance of counsel in a termination of parental rights case, is misplaced. It is true mother's counsel did more at the termination hearing than the attorney in *J.C., Jr..* *See id.* at 228 (finding ineffective assistance where parents' counsel stipulated to all of juvenile officer's evidence, did not object to objectional evidence, and did not call available witnesses). However, one who is to advocate his or her client's position could scarcely do less to fulfill this obligation than the attorney who represented the parents in *J.C., Jr..* In other words, while mother's counsel in the present case did more than the parents' attorney in *J.C.,Jr.,* that can hardly be said to mandate a finding of effective assistance by this Court.

---

3. Infant was also represented by a GAL at the hearing. Infant's GAL, though present at the proceeding, did not actively participate nor did she make any recommendation as to what disposition would be in infant's best interests. *See J.C., Jr.,* 781 S.W.2d at 228 (commenting on a GAL's role and duty to the child he or she represents).

4. *Cf. In re Guardianship of Orneika J.,* 112 A.D.2d 78, 491 N.Y.S.2d 639, 640–41 (1985)(finding mother deprived of right to meaningful hearing where counsel stood mute during hearings on whether to terminate mother's parental rights where motions to continue proceedings were denied, mother was not present for either hearing, and counsel was unable to communicate with mother).

As previously stated, mother's counsel did little to advocate her cause, failing even to request a continuance or recess so that he might secure mother's presence.[5] It appears from the record that mother was deprived of a meaningful hearing before the termination of her parental rights.

Based on the foregoing, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

---

5. *Contra Matter of Bishop*, 92 N.C.App. 662, 375 S.E.2d 676, 679 (1989)(denying ineffective assistance of counsel claim where attorney filed motion for continuance on day of hearing alleging he made repeated efforts to contact mother but was unable to do so).