

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: B.A.V., | ) | |
| | ) | |
| Appellant, | ) | WD86093 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | MAY 7, 2024 |
| JUVENILE OFFICER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
The Honorable Michael Brandon Baker, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding, Janet Sutton, Judge and
Daniel White, Special Judge

B.A.V. appeals from an order entered by the juvenile division of the Circuit Court

of Henry County, Missouri ("juvenile court"), dismissing his juvenile proceedings and

transferring him to a court of general jurisdiction for criminal prosecution as an adult

pursuant to section 211.071.[1] On appeal, B.A.V. asserts the juvenile court erred in

dismissing his juvenile proceedings and transferring B.A.V. to a court of general

jurisdiction because B.A.V. was deprived of his right to effective assistance of counsel

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) as currently
updated by supplement unless otherwise noted. Pursuant to section 509.520, this opinion does
not include any personal identifying information for the juvenile or any witness.

and due process of law during his certification proceedings.  We affirm the judgment of the juvenile court.

## Factual and Procedural Background

On November 3, 2022, when B.A.V. was eighteen years old, Juvenile Officer filed a petition in the juvenile court alleging that B.A.V. had committed seven delinquency offenses.  Specifically, B.A.V. was charged with conduct that, were he an adult, would constitute three counts of statutory sodomy in the first degree, section 566.062; three counts of child molestation in the second degree, section 566.068; and one count of unlawful use of a weapon, section 571.030.  On that same day, Juvenile Officer filed a motion to dismiss the juvenile petition to allow for the prosecution of B.A.V. under the general law.  The motion noted that a certification hearing was required by law because section 211.071.1 requires such proceedings for the offenses alleged in the petition.  The certification hearing was held on February 3, 2023, when B.A.V. was nineteen years old.

The only witness at the certification hearing was the Juvenile Officer.  Juvenile Officer testified that B.A.V. had been part of the juvenile system for years, spending time in foster care before being reunited with his father.  In October of 2019, when B.A.V. was fifteen years old, a petition was filed alleging that B.A.V. had committed child molestation, fourth-degree assault, and a status offense.  B.A.V. was adjudicated and committed to the Division of Youth Services ("DYS").  While that matter was pending, B.A.V. participated in the intensive supervision program through the juvenile court, "where he was not successful."  He did, however, eventually obtain a successful release from DYS.

2

After B.A.V.'s December 2021 release from DYS, the current petition was filed, alleging conduct that occurred when B.A.V. was sixteen years old. The conduct allegedly occurred involving "three separate victims, three separate occasions." The victims were not relatives of each other. The victims were all "quite young," under twelve years of age, and at least two of "the subjects were threatened at gunpoint not to tell of the abuse or . . . they and their mother[s] would be killed." Juvenile Officer testified that, while she became aware of two of the three victims from the current petition in May of 2020, just days after B.A.V. had been committed to DYS, she did not become aware of the third victim until June of 2022. Juvenile Officer testified that, even if a petition covering the conduct had been filed while B.A.V. was still in DYS custody, certification hearings would have been required because of the nature of the new charges. Juvenile Officer testified that B.A.V. also had criminal charges in courts of general jurisdiction in two different counties arising since his release from DYS, and those charges, in conjunction with his age and his "ongoing pattern of young, vulnerable victims and sexual assaults" rendered him ineligible to be detained in any juvenile detention facility or to be returned to DYS.

B.A.V. presented no evidence at the certification hearing, but his counsel ("Counsel") argued that certifying B.A.V. for conduct that allegedly occurred when he was sixteen years old was "patently unjust." Counsel argued that, had Juvenile Officer brought the allegations against B.A.V. sooner, his treatment and custody in DYS would have extended possibly until he reached age twenty-one, and he "would have never picked up his new adult charges." Finally, Counsel argued that B.A.V. had not shown

3

"any recidivism for these types of behaviors after October of 2021," and that, therefore, certification was improper.

The juvenile court took the matter under advisement, and then, on February 6, 2023, issued an order for certification to allow prosecution under the general law. The findings of the court, pursuant to section 211.071.6, were as follows:

(a) the offenses alleged are Count I, Unclassified Felony of Statutory Sodomy in the First Degree; Count II, Unclassified Felony of Statutory Sodomy in the First Degree; Count III, Unclassified Felony of Statutory Sodomy in the First Degree; Count IV, Class B Felony Child Molestation in the Second Degree; Count V, [Class B Felony] Child Molestation in the Second Degree; Count VI, Class B Felony Child Molestation in the Second Degree; and Count VII[,] Class E Felony Unlawful Use of a Weapon;

(b) the offenses alleged involved viciousness, force and violence and involved the use of and/or threatened use of a weapon, according to the allegations of the Petition/Motion to Modify and from the evidence heard;

(c) the offenses alleged are offenses against persons;

(d) the offenses alleged are part of a repetitive pattern of offenses which indicates that the juvenile may be beyond rehabilitation under the juvenile code;

(e) the record and history of the juvenile reflects the juvenile has had the contacts with the juvenile justice system and the record and history of the juvenile reflects the juvenile has previously received rehabilitative services all of which are outlined in Exhibit "A" as filed herein, and the juvenile failed to derive benefit from said services;

(f) the juvenile is an emotionally sophisticated and physically mature 19 year old;

(g) no placement, program or facility available to the court for the juvenile's treatment under the juvenile code would provide sufficient protection to the community;

(h) protection of the community requires transfer to the court of general jurisdiction;

4

(i)  there was no evidence that the juvenile would benefit from treatment in a juvenile facility.  Given the seriousness, and particularly the violent and vicious nature of the offenses, the age of the juvenile and the limited time for rehabilitating someone who is charged with these particular offenses, and the fact that no evidence was adduced to demonstrate the availability of a facility which could guarantee the juvenile's confinement, it is apparent that there are no reasonable prospects for rehabilitation;

(j)  race per section 211.071.6 RSMo.[2]


This appeal follows.

## Standard of Review

Juveniles' claims of ineffective assistance of counsel can be addressed on direct appeal if the record is sufficient.  *See D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 782 (Mo. banc 2019).  "So long as the juvenile receives a hearing, access to counsel, and access to his or her records, and so long as the juvenile court's decision adequately sets forth the grounds for its decision to certify such that we can review it adequately, the process is sufficient constitutionally."  *C.R.B. v. Juv. Officer*, 673 S.W.3d 135, 139 (Mo. App. W.D. 2023).  "[I]f the record is not sufficiently developed to allow for proper review of the issue raised the cause may need to be remanded to develop the factual basis for review of the claim."  *Id.*

---

[2] This part of the order appears to be incomplete.  However, Juvenile Officer testified that there was no racial disparity with respect to B.A.V.  This aspect of the order is not challenged on appeal.

5

**Analysis**

First, we note that B.A.V.'s brief fails to comply with Rule 84.04.[3] "Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Duncan-Anderson v. Duncan*, 321 S.W.3d 498, 500 (Mo. App. E.D. 2010). B.A.V.'s point relied on provides:

> The juvenile division of the circuit court erred in dismissing Respondent's petition and transferring Appellant to the court of general jurisdiction for prosecution under the general law because Appellant was deprived of his rights to effective assistance of counsel and due process of law during the juvenile certification proceedings—guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 10 and 18(a) of the Missouri Constitution, Section 211.211, and Missouri Supreme Court Rule 115.01—in that (1) the standard for determining whether counsel was ineffective in a certification proceeding should be the same standard applied in criminal cases; and (2) under the proper standard, the record establishes that Appellant's certification counsel was constitutionally ineffective such that Appellant is entitled to relief.

In his single point relied on, B.A.V. asserts Counsel was ineffective without providing how Counsel was alleged to be ineffective or explaining his legal reasoning, and thus, B.A.V. fails to comply with Rule 84.04. *See* Rule 84.04(d)(1) ("[E]ach point shall . . . [s]tate concisely the legal reasons for the appellant's claim of reversible error; and [e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."). However, we exercise our discretion to review

---

[3] All Rule references are to the Missouri Supreme Court Rules (2023).

6

this case on the merits as B.A.V.'s argument is readily understandable. *See State v. Glaze*, 611 S.W.3d 789, 794 n.6 (Mo. App. W.D. 2020).

B.A.V. asserts he was deprived of his right to the effective assistance of counsel at his certification hearing and argues, "Because the record clearly supports this claim, further fact finding is not required and this court should grant B.A.V. relief . . . . " We agree that no fact-finding is necessary in order for this Court to review B.A.V.'s claim of ineffective assistance of counsel.

B.A.V. asks this Court to adopt the *Strickland v. Washington*, 466 U.S. 668 (1984) standard for analyzing claims of ineffective assistance of counsel arising out of juvenile certification proceedings. "Missouri courts have not yet decided whether claims of ineffective assistance of counsel at certification hearings are determined by applying the meaningful hearing standard or the *Strickland* standard." *C.R.B.*, 673 S.W.3d at 139 (internal citation omitted). Either standard may be applicable. *See In re K.M.F.*, 668 S.W.3d 302, 308 (Mo. App. E.D. 2023). Here, like in prior cases, the result is similar under either standard, so we need not finally determine which standard is applicable.

B.A.V. does not even argue that Counsel was ineffective under the "meaningful hearing" standard. Under the meaningful hearing standard, we examine "whether the attorney was effective in providing his client with a meaningful hearing based on the record." *C.R.B.*, 673 S.W.3d at 139 (internal quotation omitted). In this case, Counsel cross-examined the only witness and argued during closing argument for the juvenile court to retain jurisdiction over B.A.V. as Juvenile Officer's delay in bringing the petition covering the alleged conduct in question was "patently unjust." We conclude this

7

provided B.A.V. with a meaningful hearing. *Compare id.* (holding there was a meaningful hearing where counsel cross-examined a witness, objected to testimony, and argued in closing that the juvenile would be better served in the juvenile system), *with In re J.M.B.*, 939 S.W.2d 53, 56 (Mo. App. E.D. 1997) (holding there was not a meaningful hearing where counsel did little "beyond appear for the hearing.").

The *Strickland* standard is more stringent. Under the *Strickland* standard, B.A.V. must demonstrate by a preponderance of the evidence that: (1) counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would have under similar circumstances; and (2) B.A.V. suffered prejudice as a result. *See D.C.M.*, 578 S.W.3d at 784 n.11 (citing *Strickland*, 466 U.S. at 668). "In certification cases, prejudice amounts to a reasonable probability that he would not have been certified to be prosecuted as an adult but for counsel's ineffectiveness." *C.R.B.*, 673 S.W.3d at 140 (internal quotation omitted).

B.A.V. asserts Counsel was ineffective for failing to file a motion to dismiss the petition "or otherwise pursue the equitable defense of laches." The gist of B.A.V.'s argument is that since Juvenile Officer knew of all of the victims alleged in the petition "no later than June 2022" but did not file the petition until November of 2022, when B.A.V. was eighteen years old, B.A.V. was unable to receive additional services from DYS, and had the petition been brought timely, he would have been able to remain in DYS custody and would not have been certified to a court of general jurisdiction. We disagree.

8

First, Counsel did argue that the delay in bringing the petition was "patently unjust," and he made the very argument that B.A.V. claims he failed to make; the only difference is that Counsel did not use the word "laches" during his argument.

More importantly, B.A.V. cannot establish prejudice in that he makes no showing that he would not have been certified had Counsel argued the defense of laches. Indeed, B.A.V. makes no showing he would not have been certified had Juvenile Officer brought petitions immediately upon learning of the "new" victims. As stated above, a petition was filed against B.A.V. in October of 2019 alleging that B.A.V. had committed conduct that, had he been an adult, would have amounted to child molestation and assault. He was adjudicated and committed to DYS. Juvenile Officer learned of two more victims in May of 2020. B.A.V. makes no allegations of how soon a second petition based on the new incidents could reasonably have been filed and adjudicated, or what impact that may have had on his certification.

Also, "[a]lthough the criteria [for certification] listed in section 211.071.6 are not exclusive and the juvenile court need not give equal weight to each one, the first three factors contain some of the most critical considerations in certification and the *seriousness of the offense dominates our inquiry.*" *In re K.M.F.*, 668 S.W.3d at 310 (emphasis added) (internal citations and quotations omitted). Here, the juvenile court found the first three factors favor certification. Specifically, the juvenile court found the allegations against B.A.V. involved serious offenses. Section 211.071.6(1). The new victims were "quite young," and the offenses were based on conduct that would have constituted statutory sodomy, child molestation, and unlawful use of a weapon. The

9

alleged offenses involved "viciousness, force and violence and involved the use of and/or threatened use of a weapon." They included allegations that at least two of "the subjects were threatened at gunpoint not to tell of the abuse or . . . they and their mother[s] would be killed." Section 211.071.6(2). They were offenses against persons. Section 211.071.6(3). Also, they did not happen at the same time, so the offenses alleged would have been part of a repetitive pattern of offenses, which would indicate that B.A.V. is beyond rehabilitation under the juvenile code. Section 211.071.6(4). It is unlikely that at a mandatory certification hearing for the offenses against the subsequent victims discovered in May of 2020, B.A.V. would not have been certified to be prosecuted as an adult. Moreover, a third certification hearing would have been mandatory after Juvenile Officer became aware of yet a *fourth* victim in June of 2022.

Finally, B.A.V. had pending felony charges in courts of general jurisdiction in two other counties for offenses that occurred subsequent to his release from DYS, which also shows that B.A.V. was not successfully rehabilitated from the services he did receive when he was in DYS custody. Juvenile Officer testified that these adult charges prevent B.A.V. from receiving further services from juvenile facilities or programs, so B.A.V. cannot show that there was a reasonable probability that he would not have been certified to be prosecuted as an adult had Counsel argued laches as a defense at his certification hearing. B.A.V. cites no law or evidence contrary to the testimony of Juvenile Officer.[4]

---

[4] There are statutes that prescribe when and under what conditions a youth under the age of twenty-one may be returned to the custody of DYS, but B.A.V. does not cite them nor detail how or why they may apply to him. At oral argument, both parties agreed that B.A.V. would not

B.A.V. has not established that a defense of laches, which was essentially argued by Counsel, would have caused the juvenile court to refuse to certify B.A.V. for the conduct subject to this petition and to return him to the custody of DYS. Therefore, B.A.V. does not establish that Counsel was constitutionally ineffective.

## Conclusion

For all of the above-stated reasons, we affirm the order of the juvenile court.

_____
Gary D. Witt, Chief Judge, Presiding

All concur

---

have been eligible to return to DYS custody after he incurred his adult felony charges in the other jurisdictions.