

# Missouri Court of Appeals

### Southern District

#### In Division

IN THE MATTER OF A.R.H., a minor,    )
J.M.J. and B.L.N.J.,    )
    )
    Respondents,    )  No. SD38536
    )
    vs.    )  FILED: April 3, 2025
    )
E.R.T., Jr.,    )
    )
    Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

Honorable W. Keith Currie, Judge

### **<u>AFFIRMED</u>**

E.R.T. ("Father") appeals the circuit court's judgment granting the petition of the guardians, J.M.J. and B.L.N.J. ("Guardians"), to adopt A.R.H. ("Child").[1] Guardians' October 2023 petition alleged, and the trial court found, that Father's consent to the adoption was not required because, for the six-month period immediately prior to the filing of the petition, he willfully, substantially, and continuously neglected to provide Child with necessary care and protection. *See* sections 211.447.5(1)(b) and 453.040(7).[2] Father does not challenge the substantive merits of the adoption judgment but, rather, contends in two points that his court-

---

[1] The circuit court also found that the consent of Child's birth mother to the adoption was not required, and she is not a party to this appeal.
[2] Unless otherwise stated, all statutory references are to RSMo 2016 as amended through RSMo Cum.Supp. (2021).

appointed trial counsel was ineffective.  We affirm.

In adoption proceedings, birth parents have a statutory right to counsel.  Section 453.030.11.  Such a right implies that counsel be effective.  *Cf.* ***C.V.E. v. Greene County Juvenile Office***, 330 S.W.3d 560, 574 (Mo.App. 2010) (recognizing that section 211.462.2, establishing a right to counsel in termination of parental rights cases, "implies a right to *effective* assistance of counsel; otherwise, the statutory right to counsel would become an empty formality" (internal quotation marks omitted)).  The test for effectiveness is "whether the attorney was effective in providing his [or her] client with a meaningful hearing based on the record." ***Int. of J.P.B.***, 509 S.W.3d 84, 97 (Mo. banc 2017) (internal quotation marks omitted).

We begin by addressing Father's second point, in which he asserts that trial counsel was ineffective because she "failed to object to the [adoption] proceeding as being in violation of Father's due process in that Father was neither served with process nor afforded court-appointed counsel in the underlying juvenile proceeding rendering the underlying juvenile judgment void for lack of personal jurisdiction."  This point fails for various reasons.

First and foremost, while Father cites to documents purporting to be from the underlying juvenile proceeding and subsequent guardianship proceeding, those documents are found in the appendix Father filed with his brief, not the legal file.  We cannot consider documents outside of the circuit court record and "[t]he mere inclusion of documents in an appendix to a brief does not make them part of the record on appeal." ***In re Adoption of C.M.B.R.***, 332 S.W.3d 793, 823 (Mo. banc 2011) (internal quotation marks omitted), *abrogated on other grounds by* ***S.S.S. v. C.V.S.***, 529 S.W.3d 811 (Mo. banc 2017).

Furthermore, even if the relied-upon records were properly included in the record on appeal, those records would nevertheless be unavailing.  "Where a judgment is attacked in other

2

ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack." *Int. of K.R.T.*, 505 S.W.3d 864, 868 (Mo.App. 2016) (internal quotation marks omitted). "Generally, a judgment must be challenged via direct appeal and not by a collateral attack." *Id.* "If the judgment was rendered by a court that had both subject-matter jurisdiction and personal jurisdiction, then the judgment is not open to attack." *Int. of A.R.B.*, 586 S.W.3d 846, 860 (Mo.App. 2019).

Father attempts to circumvent this prohibition, arguing that his claim is jurisdictional. Specifically, Father argues, without any citation to applicable authority, that a personal jurisdictional defect arose in the juvenile proceedings because he was never served with a copy of the juvenile officer's neglect petition purportedly filed in July of 2021. However, in order to be considered a "parent" and therefore a "party" under Rule 114.01 (directing summons and petition service to "all parties" in juvenile proceedings), Father would have had to meet, at a minimum, the definition of a "presumed father" under Rule 110.04(24).[3] A "presumed father" is "a man presumed to be the biological father of a juvenile pursuant to sections 210.819 to 210.853, RSMo[.]" Rule 110.04(24). But Father's relied-upon documents reveal nothing indicating he met the criteria of a presumed father. *See* section 210.822 (setting forth conditions where "[a] man shall be presumed to be the natural father of a child" including the attempt to marry, acknowledgement of paternity, genetic testing, and other similar conditions). At best, Father's legal parentage was putative until October of 2022, near the end of the juvenile proceedings and the commencement of the guardianship proceedings, when genetic testing revealed that he was Child's biological father. Thus, Father's relied-upon documents do not

---

[3] All rule references are to Missouri Supreme Court Rules (2021).

support his claim that service of the juvenile officer's neglect petition upon him was legally required. It follows that the absence of a collateral attack by trial counsel in the later adoption proceedings, on the basis of a defect that did not exist, does not amount to ineffective assistance. *See Int. of N.L.W.*, 534 S.W.3d 887, 902 (Mo.App. 2017) (stating "[c]ounsel will not be deemed ineffective for failing to make non-meritorious objections" (internal quotation marks omitted)). Point 2 is denied.

We turn then to Father's first point, in which he contends that his trial counsel was ineffective because she "failed to properly prepare for or participate fully in the [adoption] hearing and in failing to do so denied Father a meaningful hearing." In arguing this point, Father identifies several cases analyzing ineffective-assistance-of-counsel claims in the context of proceedings involving the termination of parental rights. In only two of these cases, *Int. of J.C., Jr.*, 781 S.W.2d 226 (Mo.App. 1989), and *Int. of J.M.B.*, 939 S.W.2d 53 (Mo.App. 1997), did the reviewing court determine that there was ineffective assistance of counsel. Father's comparison of the instant case to said previous cases is, however, unavailing.

In the *J.C.* case, counsel for the parents successfully argued to keep them out of the courtroom, despite their presence at the courthouse. 781 S.W.2d at 228. Also, the parents' counsel stipulated to wholesale admission of reports and records despite the "many objections" available, and he "called no witnesses despite the fact that there were two witnesses there on the parties' behalf that expected to testify." *Id.* In *J.M.B.*, the mother failed to appear, yet her counsel did not seek a continuance. 939 S.W.2d at 56. The mother's counsel asked the juvenile officer's witness a few questions "not exceeding a dozen" on cross-examination and "only three of these concerned the voluntariness of mother's consent, which was a crucial issue at the

4

hearing." *Id.* Also, the mother's counsel offered no evidence or argument on the mother's behalf, stating, instead, that he believed "that mother's parental rights should be terminated." *Id.*

Trial counsel's performance in the instant case is distinguishable from those at issue in the *J.C.* and *J.M.B.* cases. Here, the central issue of contention was the extent to which Father provided Child with care and support while in Guardians' custody. During the relevant timeframe, Father was incarcerated and remained so at the time of the hearing. The Guardians' testimony was that Father had not provided any care or support for Child aside from one Christmas card sent in December of 2022. On cross-examination, Father's trial counsel elicited testimony that Guardians did not respond to Father's card because their case manager advised that all future communication between Father and Child go through the Children's Division. Trial counsel elicited further testimony that Guardians never provided Father with their phone number and they were unaware whether he received it from Children's Division. Trial counsel also elicited testimony from Father, who appeared remotely by telephone, about the difficulty he had in sending the Christmas card and that he had sent letters to Guardians and tried to call them using a phone number that was provided to him without success.

Father nevertheless argues that trial counsel's performance was deficient despite this record. Father asserts that trial counsel did not seek a writ to allow Father to testify in person, did not adequately communicate with Father, did not explore settlement options, did not conduct discovery, did not object during Guardians' testimony, did not call Father's adult son as a witness, and did not make a closing argument. Many of the alleged omissions, such as Father's claims regarding communication, settlement, and discovery, simply lack support in the record and other filings before us.[4] Father fails to explain the materiality of other omissions. For

---

[4] Although not implicated here, our high court in *C.M.B.R.* observed that evidence offered outside the record in an appendix to substantiate a claim of ineffective assistance of counsel initially raised on direct appeal may require a

instance, even though the transcript confirms that trial counsel did not make any objections, Father fails to identify what viable objections to Guardians' testimony, if any, were omitted. Further, Father offers no explanation how testifying by telephone served to diminish his own testimony. We note that during such testimony, Father mentioned, in the context of being asked whether "anyone reach[ed] out to [his] grown children about taking [Child] when [she] was removed[,]" that he wanted to call his son as a witness. While, on appeal, Father holds the failure to call this witness against his trial counsel, he offers no explanation how the proposed testimony alluded to at trial addressing guardianship alternatives would have been relevant in a post-guardianship adoption proceeding. And while the transcript reflects that trial counsel did not make a closing argument as Father alleges, it also reflects that the trial court asked Father if there was anything else he wanted to say, and Father responded by offering argument that Guardians' petition should be denied.

We conclude by noting that counsel in *J.C.* and *J.M.B.* have been described in later decisions as having been "effectively absent" during those proceedings. *Int. of A.R.B.*, 586 S.W.3d at 862; *accord In re K.A.F.*, 592 S.W.3d 382, 383 (Mo.App. 2019). While Father takes issue in several respects with the thoroughness of trial counsel's performance, including her already-discussed examination of witnesses, we simply cannot say that she was "effectively absent" such as would have denied him a meaningful hearing. Point 1 is denied.

The circuit court's judgment is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR
DON E. BURRELL, J. – CONCURS
JACK A. L. GOODMAN, J. – CONCURS

---

mechanism for resolving factual disputes arising from such evidence, with remand and the appointment of a special master suggested as possible mechanisms. 332 S.W.3d at 820 n.22.